# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

THOMAS E. MINOGUE, et al. :
:
:
v. : Civil No. CCB-03-3391
:
:
ARTHUR B. MODELL :
:
:

## MEMORANDUM

Thomas E. Minogue and other co-trustees of the Phyllis Andrews Family Trust ("the plaintiffs") filed suit against Arthur B. Modell in this court in 2003. As part of that case, the court entered a protective order to govern the conduct of the parties with respect to the use or disclosure of information produced in discovery. Now pending are the defendant's motion to enjoin the plaintiffs' violation of the protective order, the plaintiffs' motion to vacate the designation of certain documents as confidential under the protective order, and the defendant's motion to stay the effect of the court's ruling to permit an appeal.[1] For the following reasons, the defendant's motion to enjoin and the plaintiffs' motion to vacate both will be denied. The defendant's motion to stay will be denied as moot.

## BACKGROUND

This case contains a lengthy and complicated procedural history, a portion of which is recounted here. The plaintiffs first filed suit against Mr. Modell in 2003 in Ohio state court over an alleged "finder's fee" agreement that allegedly required Mr. Modell to pay five percent of his

---

[1] Also pending are three motions to seal and five interim motions to seal the parties' pleadings, and the defendant's motion for leave to file a surreply.

1

net gain from the sale of his stock in the Cleveland Browns (now Baltimore Ravens) football team if he ever completely divested all of his stock interest. Mr. Modell removed the case to the United States District Court for the Northern District of Ohio, which then granted Mr. Modell's motion for a transfer of venue to this court.

On April 9, 2004, a protective order was entered stating, in part, that:

> Information marked "CONFIDENTIAL" shall not be disclosed or made available by the receiving party to persons, parties, or entities other than Qualified Persons. No person, party, or entity who receives Confidential information produced or exchanged shall disclose such information to any person, party, or entity other than Qualified Persons. Under no circumstances shall Confidential information be used for business, competitive or other purposes not associated with the prosecution or defense of this case.

(Protective Order ¶ 5, ECF No. 63.) The protective order provides that the party producing the material "may designate it as Confidential only when such person in good faith believes it contains sensitive personal information, trade secrets or other confidential research, development or commercial information." (*Id.* at ¶ 1.) The protective order also established that if any party disagreed with the designation of a document as confidential, the party "shall so inform the designating party and all other parties in writing, and the parties shall first try to resolve such a dispute" before challenging the designation of confidentiality by motion. (*Id.* at ¶ 14.) Finally, the protective order stated that it "shall remain in force and effect thereafter until modified, superseded, or terminated on the record by an Order of the Court." (*Id.* at ¶ 15.)

On June 28, 2004, the plaintiffs filed a motion to compel the production of accountant-client communications relating to the tax planning involved in the 1999 restructuring and sale of Mr. Modell's interests in the Baltimore Ravens. In granting the plaintiffs' motion, Magistrate Judge Paul W. Grimm held that Ohio law governed the dispute and that Ohio law did not recognize the accountant-client privilege. (*See* Nov. 19, 2004 Hearing Transcript, ECF No. 131.)

2

Judge Grimm ordered the defendant to produce the documents. (*Id.*) This court affirmed Judge Grimm's ruling on December 8, 2004. On January 10-12, Mr. Modell produced the accountant-client communications, nine of which are at issue here, but designated all of the documents as confidential. The plaintiffs did not at that time challenge the designation. Summary judgment was granted in favor of Mr. Modell on July 22, 2005. *See Minogue v. Modell*, 384 F. Supp. 2d 821 (D. Md. 2005).

The plaintiffs then filed a second suit against Mr. Modell in Ohio state court. The Ohio court dismissed the action in 2006 on forum non conveniens grounds, concluding that Maryland was the most appropriate venue for litigation of the plaintiffs' claims. The plaintiffs then filed a third suit in New York state court, which was also dismissed on forum non conveniens grounds, provided that Mr. Modell agree to accept service of process and not raise limitations as a defense if the plaintiffs elected to promptly file a new suit in Maryland. The plaintiffs are currently appealing the New York court's decision, and the defendant is cross-appealing the condition imposed by that court.

Mr. Modell alleges three violations of the protective order that he asserts entitle him to injunctive relief. First, during the course of the New York state court case, the plaintiffs inadvertently filed a document previously designated as confidential under this court's protective order on the public docket of the Supreme Court of the State of New York. Defense counsel did not realize at that time that the document had been filed. Upon the defendant's later request, the plaintiffs filed a motion to seal the document to comply with this court's protective order.[2]

---

[2] On October 20, 2010, the Supreme Court of the State of New York denied the motion to seal, holding that "given the 10+ year age of the document, there is no basis for finding that it contains confidential information, the release of which may be detrimental to the company's current business strategies" and that the document "involves neither trade secrets nor information that could threaten the corporation's competitive advantage if open to public

At some point during the course of the plaintiffs' action in New York state court, they also filed an I.R.C. § 7623 (21 U.S.C. 7623) application with the Internal Revenue Service ("IRS") asking the IRS to review $198.8 million in inter-company loans allegedly distributed to Mr. Modell's holding companies as part of the 1999 sale of the Baltimore Ravens. The plaintiffs allege that the proper tax treatment of the $198.8 million is relevant to calculating the amount of money the plaintiffs would be entitled to should they prevail on their claims. Although the plaintiffs contend that their application to the IRS "relied entirely on non-confidential materials produced in this case," the defendant believes that they not only used confidential information in their application, but are poised to disclose the confidential information to the IRS in the near future.

On March 23, 2010, Mr. Modell filed, under seal, a motion to enjoin the plaintiffs' alleged imminent violation of the court's protective order. The plaintiffs opposed the motion and filed a separate motion, also under seal, to vacate the designation of nine documents the defendant previously marked as confidential. These nine documents include:

1. an Arthur Andersen memo, dated January 16, 2001, from Michael S. Bison to "The Files" with the subject heading, "Baltimore Ravens – Equity Transaction;"

2. a document entitled, "Arthur Andersen Project Royal Executive Summary," dated August 23, 1999, recommending how the Ravens sale should proceed;[3]

3. an Arthur Andersen facsimile, dated January 21, 2000, from Barbara Bellamy to Art Yonowitz with an attached memo entitled, "Baltimore Ravens Limited Partnership: Alternative Partnership Structure";

---

disclosure." *Andrews v. Modell*, Index No. 4170/07, at 4 (N.Y. Sup. Ct. October 20, 2010) (attached to Pls.' Letter to the Court, ECF No. 216).

[3] This is the document that was filed on the public docket in New York state court by the plaintiffs and remains unsealed.

4. an Arthur Andersen memo, dated December 13, 1999, from Michael S. Bison to "The Files" summarizing a conference call with Brian Knudson;

5. an Arthur Andersen memo, dated January 3, 2000, from Arthur J. Yonowitz to "The Files";

6. an undated Arthur Andersen memo from Arun Subhas to Art Yonowitz;

7. an email, dated January 15, 2001, from Michael S. Bison to Jeff Goering;

8. a promissory note, dated April 18, 2000; and

9. a copy of the same promissory note.

All the documents deal primarily with the tax implications of the sale of the Ravens and are more fully described and attached to the plaintiffs' memorandum in support of their motion to vacate. (Green Decl., April 7, 2010, Ex. A-I, ECF No. 195.) They were produced in discovery but not filed with the court in support of any dispositive motion.

The defendant opposed the plaintiffs' motion to vacate and filed a separate motion to stay the effect of the court's ruling should it decide to de-designate the documents as confidential. The plaintiffs have opposed the defendant's motion to stay.

## ANALYSIS

A. **Defendant's Motion for Leave to File Surreply**

The defendant has filed a motion for leave to file a surreply to respond to the plaintiffs' reply memorandum in support of their motion to vacate the designation of certain documents as confidential. The plaintiffs' reply memorandum, among other arguments, requests, for the first time, the modification of the court's protective order to permit the sharing of confidential information with the IRS. Local rules do not permit the filing of surreply memorandum unless specifically ordered by the court. Local Rule 105.2.a. (D.Md. 2010). Such an order is appropriate

where "the moving party would be [otherwise] unable to contest matters presented to the court for the first time in the opposing party's reply." *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 467 (D. Md. 2008) (internal quotations and citation omitted). Because the plaintiffs have raised an alternative theory of relief that warrants a surreply and allowing a surreply will not prejudice the plaintiffs, the defendant's motion for leave to file will be granted and the surreply has been considered.

### B. Defendant's Motion to Enjoin Violation of Protective Order

Mr. Modell's request for an injunction, in addition to the protective order already in place, depends on showing a real and imminent threat that the order will be violated. *See, e.g.*, *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 347 (4th Cir. 2001). Injunctive relief is not to be imposed as a sanction for past violations. *Id.* (citing *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952)). Mr. Modell has shown one inadvertent violation in the New York State case, a filing not noticed by his counsel until raised by the plaintiffs, and a "violation" that involved sharing information with a mediator who promised to keep it confidential, (*see* Pls.' Reply in Support of Mot. to Vacate at 9), even though she did not sign the required form. There is no evidence that any of the documents have been disclosed to the IRS, and only speculation that the documents have been "used" in preparing the I.R.C. § 7623 application. Accordingly, the motion for injunction will be denied.

### C. Plaintiffs' Motion to Vacate

The court issued a protective order in 2004 under the authority of Rule 26(c) of the Federal Rule of Civil Procedure, which currently provides:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . (D) . . . limiting the scope of disclosure or

> discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . .

Fed. R. Civ. P. 26(c). Generally, to establish that a document is entitled to protection from disclosure under Rule 26(c), a party must show that "(1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm." *Deford v. Schmid Products Co., a Div. of Schmid Labs., Inc.*, 120 F.R.D. 648, 653 (D. Md. 1987)[4]; *see also Wilson v. C.R. Bard, Inc.*, 149 F.3d 249, 252 (4th Cir. 1998). Where a business is seeking protection under Rule 26(c), it must show that disclosure "would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Deford*, 120 F.R.D. at 653. The scope of information protected under Rule 26(c) is not limited to trade secrets and commercial information, however, as courts have also "consistently granted protective orders that prevent disclosure of many types of information, such as letters protected under attorney-client privilege . . . inadvertently sent to the opposing side; medical and psychiatric records confidential under state law; and federal and grand jury secrecy provisions." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (holding that a court may also grant protective orders to protect confidential settlement agreements). Tax returns frequently are protected from public disclosure. *See, e.g. Minter v Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 597 (D.Md. 2009). If confidentiality and harm are shown, then the party seeking disclosure "must establish that the information is sufficiently necessary to his case to outweigh the harm of disclosure." *Wilson*, 149 F.3d at 252.

---

[4] I cite this opinion because of the parties' reliance on it and because it is also consistent with more recent case law.

On April 6, 2010, as required by ¶ 14 of the protective order, the plaintiffs requested that Mr. Modell withdraw the confidential designation as to the nine documents that are the subject of this motion. After the parties failed to resolve their dispute over the designation of the documents on their own, the plaintiffs filed a motion to vacate the confidential designations pursuant to the procedures established in the protective order. (*See* Protective Order ¶ 14, ECF No. 63.) Accordingly, it is now the burden of the defendant to prove that the nine documents are entitled to confidentiality under Rule 26(c). Mr. Modell argues that the documents are entitled to confidentiality because they relate to tax planning information and reveal "private, accountant-client communications regarding sensitive tax issues" that are protected under Maryland law. (Def.'s Omnibus Reply at 12.)

Under Maryland law, accountant-client communications are subject to a statutory privilege and may not be disclosed without the express consent of the client. *See* MD. CODE ANN., CTS. & JUD. PROC., § 9-110; see also *BAA, PLC v. Acacia Mutual Life Ins. Co.*, 929 A.2d 1, 6 (Md. 2007); *Hare v. Family Publications Serv., Inc.*, 334 F. Supp. 953, 960 (D. Md. 1971). While it was determined that Ohio law controlled the prior litigation, and the documents were ordered to be disclosed to the plaintiffs, that disclosure was subject to the present protective order. The plaintiffs have not persuasively disputed that the Maryland privilege otherwise would apply to these documents, nor have they shown that the privilege is eliminated by the passage of time. Further, they did not challenge the confidentiality designation prior to the entry of judgment in this case.

The plaintiffs' claim that they seek disclosure now for purposes of this litigation is tenuous at best. There is no pending case in Maryland; the New York case is on appeal. The

theory that the IRS proceeding would be useful in responding to a defense expert is speculative in any event, as it appears no expert has been designated in the New York case. To the extent the plaintiffs seek permission to disclose the documents in confidence to the IRS because an IRC § 7623 application carries the possibility of a monetary reward, I would, at a minimum, need additional information about that application and any position the IRS may take regarding the documents.

In sum, the harm alleged by Mr. Modell is public disclosure of otherwise privileged personal and confidential tax information. Whether or not disclosure would cause any business or competitive harm, this is the kind of sensitive information ordinarily protected by courts and, in this instance, by a strong legislative policy of the forum state. The plaintiffs have shown no use for the information in connection with any pending litigation. Accordingly, the plaintiffs' motion to vacate will be denied.

### D. Motions to Seal

The defendant's motions to seal the motions and memoranda in this case, and the plaintiffs' interim motions, are governed by a different standard than the plaintiffs' motion to vacate. The Fourth Circuit has explained that there is a First Amendment right of access that may apply to documents filed in connection with a summary judgment motion in a civil case, and a common law presumption of access for the public to inspect and copy "all judicial records and documents." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575-576 (4th Cir. 2004). Whether the right of access derives from the First Amendment or the common law, it "may be abrogated only in unusual circumstances" *Id.* at 576 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)). Discovery material not filed in support of

a dispositive motion, however, "stands on a wholly different footing" as discovery "is ordinarily conducted in private." *Id.* (internal quotation marks omitted) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988)). In this case, the nine documents, which were produced only in discovery, do not lose their more private status simply because the plaintiffs attached them to the motion to vacate. Analyzing the question under either a First Amendment or common law right of access, however, I see no basis to seal the motions and memoranda themselves, except to the extent they reveal the contents of the documents, nor is there a basis to seal the exhibits, other than the nine documents at issue. Finally, as a practical matter, there is no longer any basis to seal the document that has been placed on the public docket in New York.

Accordingly, the motions to seal will be granted as to the other eight documents and as to any part of the motions or memoranda that directly disclose the contents of those documents, and otherwise denied. Counsel will be given time to file redacted versions.

A separate Order follows.

<u>March 30, 2011</u>                          <u>/s/</u>
Date                                            Catherine C. Blake
                                                United States District Judge